CASE 69—INDICTMENT—OCTOBER 30.

# Young v. Commonwealth.

APPEAL FROM LYON CIRCUIT COURT.

1. AFFIDAVIT OF DEFENDANT FOR A CONTINUANCE BEING "ADMITTED TO BE TRUE," HE HAD A RIGHT TO READ IT AS EVIDENCE TO THE JURY.—The affidavit stated what the defendant could prove by an absent witness, in reference to the circumstances and inducements under which he made certain statements while in custody, conducing to establish his guilt, and that he expected the commonwealth on the trial to prove those statements, etc. On the trial, against the objections of the defendant, the commonwealth proved statements or confessions of the defendant made while he was in custody. The circuit court then erred by refusing to permit the defendant to read his affidavit, which had been "*admitted to be true*," as evidence to the jury.

2. CONFESSIONS—WHEN COMPETENT AND WHEN NOT.—Confessions induced by promises, threats, or advice of the prosecutor, or officer having the prisoner in charge, or of any one having authority over him, or the prosecution itself, or "*a private person in the presence of one in authority*" whose acquiescence may be presumed, will not be deemed voluntary, and will be rejected.

But confessions superinduced by indifferent persons acting officiously, without any kind of authority, will be admitted as evidence. (1 Greenleaf on Evidence, sections 222, 223; 2 Archbold's Criminal Practice and Pleading, page 420; Roscoe's Criminal Evidence, 32; 1 Wharton's American Criminal Law, section 686.)

Advice to surrender and confess that he was guilty, that it would be better for him, etc., given to the defendant by a friend who was in the house with him before his surrender, when the sheriff and *posse* had the house surrounded, should not be regarded as given in the immediate presence of the sheriff. Such advice did not render the defendant's subsequent admissions incompetent as evidence, although it may have induced him to make the admissions.

It was the province of the court in its discretion, and not of the jury, to decide as to the admissibility of the admissions as evidence.

3. Evidence conducing to prove the defendant's guilt as a principal in the second degree was competent under the indictment accusing him in general terms as one of the actual slayers, it being imma-

terial which of them fired the fatal shot.  (1 Hale's Pleas of the Crown, 437; 1 Russell on Crimes, 510; Thompson v. Commonwealth, 1 Metcalfe, 13.)

4. ERRONEOUS INSTRUCTION AS TO PROOF OF AN ALIBI—IDENTITY OF TIME.—With reference to the evidence conducing to prove an *alibi*, the court, after informing the jury that to sustain that ground of defense identity of the time of the murder with the presence of the defendant at another place was essential, told the jury in effect that to give the defense its highest character the required identity "*must be made to appear by some definite and certain standard of time or time-piece*," and unless it be so ascertained, instead of being proved by other modes, the defense will be "greatly weakened."  This discrimination between artificial means of keeping time and other modes of proving the fact relied on was well calculated to mislead the jury, and to induce them to regard as weak and unsatisfactory evidence facts and circumstances showing that it was physically impossible for the defendant to have been at the place of the homicide when it occurred.

S. MARBLE, .  }
R. W. WAKE,  }  . . . . . . . . . .  For Appellant,

CITED

Criminal Code, sections 247, 226, 245, 267.
Myers's Supplement, page 78.

JOHN RODMAN, Attorney-General, . . . .  For Appellee,

CITED

Criminal Code, sections 334, 247, 372.
1 Metcalfe, 10, Tipper v. Commonwealth.
3 Bush, 481, Hopkins v. Commonwealth.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

The appellant, Wylie Young, was tried, convicted, and sentenced to be hung for the murder of James Still, on an indictment against him and William Hopkins as principals, and William Martin and Alf Nichols as accessories, as stated in the general charge, but more properly as principals in the second degree, according to the specifications of that charge; and this appeal is prosecuted for a reversal of the judgment.

It appears from the evidence that Still, while riding on the

public highway in company with Samuel Dupriest, was shot by persons waylaying him for the purpose, and instantly killed; and the principal inquiry on the trial, and that to which the evidence and rulings of the court were mainly directed, related to the identity of the prisoner as one of the perpetrators of the crime.

Dupriest, who was also shot, testified that when Still was killed he saw two men standing behind a log near the road, who fired the shots by which he was wounded, and both Still and his horse were killed; but he did not recognize either of the men. Other evidence was adduced conducing to implicate the appellant in the killing; and some statements made by him after his arrest were proved and admitted for the consideration of the jury as confessions of his guilt. Evidence was also produced by him tending to prove an *alibi*.

In the argument for the appellant various decisions and rulings of the court are questioned as erroneous. Omitting the consideration of such of these objections as are deemed either unimportant or unavailable in this court, we will state and dispose of the questions involved by the others in the order in which they are presented.

When about being put on his trial the defendant filed his affidavit, suggesting his expectation that the commonwealth would prove statements made by him while in custody conducing to establish his guilt, and praying for a continuance of his cause because of the absence of Henry Denson and J. E. Denson, by whom he alleged he could prove the following facts, which he also stated: "That on the night he was arrested by the sheriff, he (the said H. Denson) informed defendant that the house in which he was sleeping was surrounded by the sheriff and his *posse*, who had come to arrest him on the charge of killing James Still; and that before the said arrest was made, and while the said sheriff was demanding his surrender, he was advised by said Henry Denson to surrender,

confess that he was guilty, turn state's witness against the other parties who were jointly charged with him; and that it would be better for him, since there would be witnesses brought against him who would swear anything to secure his conviction, and that his only chance to get rid of the charge was by so doing, as above indicated; that he did thereupon surrender himself into the custody of the sheriff.  . . . . That defendant was then living and residing with the said two witnesses in their own house, and that said witnesses had a great deal of influence over him, and had been and were his advisers about matters of his own most important concerns." It is stated in the bill of exceptions that this affidavit "was admitted to be true" for the purpose, as we must infer, of sustaining objections of the defendant to the admissibility of the anticipated proof of his confessions, if not as evidence to rebut its influence upon the jury.

On the trial the sheriff testified that he arrested the defendant at the house of the Densons, after resistance on the part of the prisoner for about three hours; and that he had with him a *posse* of six men, one of whom was drunk, and during the time "they fired one accidental shot and one that was not accidental," and that finally "Henry Denson went into the house and brought Young and his arms out of the house."

Against the defendant's objections the sheriff was permitted to testify "that on the day after Young was arrested he told him that he did not kill Still himself, but that he knew who did kill him; that he saw the man get behind the log that did kill him." And the commonwealth was likewise allowed to prove by T. B. Williams other statements of the defendant, made while in custody, tending to criminate himself.

It is contended for the appellant that it was erroneous to admit any part of the evidence importing a confession of guilt on his part, for the reason that the statements proved to have

been made were not voluntary, but were made by him under the influence of hopes and fears held out to him by Denson at the time of his arrest. In view of the numerous and somewhat conflicting *dicta* on the subject, we regard the question thus presented as one of much difficulty. The general doctrine is indisputable, that confessions which are "forced from the mind by the flattery of hope or the torture of fear" are considered as made under mental duress, and therefore incompetent as evidence; but whether they are so extorted must depend on the character of the authority, power, or influence by which they are induced; and it will not be presumed that a person having no control over a prisoner, or the charge against him, or authority to make good a promise or execute a threat, could without physical force, or duress at least, so far inspire either hope or fear in his mind as to induce a false confession of his guilt. While therefore it is clear that confessions induced by the promises, threats, or advice of the prosecutor or officer having the prisoner in charge, or of any one having authority over him, or the prosecution itself, or of "a private person in the presence of one in authority," whose acquiescence may be presumed, will not be deemed voluntary, and will be rejected, the rule is generally the reverse in relation to confessions superinduced by indifferent persons, acting officiously, without any kind of authority; and confessions made under such circumstances will be admitted in evidence. (1 Greenleaf on Evidence, sections 222, 223; 2 Archbold's Crim. Practice and Pleading, 420; Roscoe's Crim. Evidence, 32; 1 Wharton's American Criminal Law, section 686.)

It is insisted, however, that although Henry Denson had no authority over the defendant, nor power to control the prosecution against him, yet as he gave his advice to the defendant as his friend, in view of the facts that the sheriff and his *posse* then held him in their power and further resistance must be fruitless, the advice of Denson should be regarded

Young v. Commonwealth.

as given in the immediate presence of the sheriff and with his sanction. But we think differently. Whatever may have been the peril of the appellant, and the effect on his mind of the circumstances which surrounded him, we can see no sufficient reason for treating the advice of Denson otherwise than as the counsel of a private friend of the defendant, which did not render his subsequent admissions incompetent as evidence, although it may have induced him to make the admissions. And it was the province of the court in its discretion, and not of the jury, to decide as to the admissibility of those admissions as evidence.

But there was a further ruling of the court with reference to this evidence in which we do not concur. After the evidence had been admitted the defendant offered to read to the jury his affidavit, which, as we have shown, the commonwealth had admitted to be true; but the court rejected it.

It was proper for the court to decide as it did as to the admissibility of the defendant's statements or confessions as evidence; but it was for the jury to estimate the degree of credit due to them under all the circumstances of the case; and to enable the jury to do this they should have been allowed to consider the facts relied on as having induced the admission, and which the commonwealth had conceded to be true.     (1 Greenleaf, *supra*, sections 201–215.)

With reference to the action of the court in instructing the jury, it is insisted in the argument for the appellant, in effect, that as he was charged in the indictment as one of the persons who actually shot and killed Still, and not as a mere aider and abettor in the homicide, the court erred in informing the jury substantially that they might convict him on proof that Still was willfully and maliciously killed by the hands of others, and that the appellant was present, or near enough to render assistance, aiding and abetting therein. But if the defendant was guilty in either aspect of the case, he was in law a prin-

cipal, and not merely an accessory, and evidence conducing to prove his guilt as a principal in the second degree was competent under the indictment accusing him in general terms as one of the actual slayers of Still, it being immaterial which of them fired the fatal shots. (1 Hale's Pleas of the Crown, 437; 1 Russell on Crimes, 510; Thompson v. Commonwealth, 1 Metcalfe, 13.)

It appears that after the retirement of the jury they returned into court, and suggested "that they had not and probably could not agree," and thereupon the court gave them one instruction "at the instance of the defendant," and also gave others, to which he excepted. In relation to these it is insisted that the court disregarded the provisions of section 247 of the Criminal Code, the jury not having "*required*" further "*information*" from the court, and it not appearing that the instructions were given "in the presence of or after notice to the counsel of the parties." But, waiving these alleged irregularities, it seems to us the court erred in one of the additional instructions given, to which the defendant excepted. With reference to the evidence conducing to prove an *alibi*, the court, after informing the jury that to sustain that ground of defense identity of the time of the murder with the presence of the defendant at another place was essential, told the jury, in effect, that to give the defense its highest character the required identity "must be made to appear by some definite and certain standard of time or time-piece," and unless it be so ascertained, instead of being proved by other modes, the defense will be "greatly weakened." This discrimination between artificial means of keeping time and other modes of proving the fact relied on was well calculated to mislead the jury, and to induce them to regard as weak and unsatisfactory evidence facts and circumstances showing that it was physically impossible for the defendant to have been at the place of the homicide when it occurred.

Without specifically indicating any other fatal errors in the instructions, we deem it proper to say that we regard most of them as too long and too much involved for a perspicuous presentation of the law of the case.

For the errors stated the judgment is reversed, and the cause remanded for a new trial, and further proceedings not inconsistent with this opinion.