COMMONWEALTH of Kentucky,
Appellant/Cross–Appellee,

v.

Robert Edward COOPER,
Appellee/Cross–
Appellant.

Nos. 93–SC–618–DG, 93–SC–1021–DG.

Supreme Court of Kentucky.

Feb. 16, 1995.

Rehearing Denied June 8, 1995.

Chris Gorman, Atty. Gen., Frankfort, C. Lloyd Vest, II, Sp. Asst. Atty. Gen., Louisville, for Commonwealth.

Harry B. O'Donnell, IV, Thomas E. Schwietz, Louisville, for Cooper.

LAMBERT, Justice.

The question before the Court is whether Section Eleven of the Constitution of Kentucky or a viable doctrine of the common law requires suppression of a confession coerced or improperly obtained by private parties. Prevailing decisional law answers firmly in the negative (*Peek v. Commonwealth*, Ky., 415 S.W.2d 854 (1967)), and is in accord with controlling precedent interpreting the Constitution of the United States. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).[1] Despite the foregoing,

---

1. Our "involuntary confession" jurisprudence is entirely consistent with the settled law requiring some sort of "state action" to support a claim of violation of the Due Process Clause of the Fourteenth Amendment.

. . . .

The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause.

the trial court held that Section Eleven of the Constitution of Kentucky was without any requirement of state action, thereby subjecting incriminating statements made to purely private persons to a "compelled ... evidence" analysis. The Court of Appeals disclaimed reliance on either federal or state constitutional law, but relied on "an ancient doctrine conceived in the common law...." that confessions obtained by coercive techniques, whether by state or private actors, were involuntary and inadmissible in criminal prosecutions. We granted discretionary review and now reverse the courts below.

The facts, as found by the trial court and relied upon by the Court of Appeals, are substantially as follows. While employed by United Parcel Service in Louisville, appellee Robert Edward Cooper was observed standing over two parcels, one of which was open. On questioning by his supervisor, appellee soon confessed to having opened the parcel. On further questioning, he admitted having committed other UPS thefts and provided tangible evidence which confirmed his oral and written confessions. However, in the course of the interrogation, UPS personnel assumed the role of authority figures and asserted control over appellee. He felt significantly intimidated by virtue of being questioned for something over one hour in a windowless room which had a motion detector and closed, possibly locked, doors. Moreover, UPS personnel expressly or impliedly promised appellee that in exchange for his cooperation, he would not be prosecuted.

On the other hand, there was no evidence of violence or threat of violence against appellee. He was not physically prevented from leaving the scene and was urged only to tell the truth. The only police officer present was appellee, a military policeman with the Kentucky National Guard, and he testified to being familiar with police procedures.

■ Upon the foregoing evidence, the trial court ordered suppression of appellee's statements and on the Commonwealth's interlocutory appeal, pursuant to KRS 22A.010, the

Court of Appeals affirmed. Both courts below acknowledged the absence of grounds for suppression pursuant to the Constitution of the United States, but interpreted Kentucky law more broadly than corresponding federal constitutional rights. Holding that state action is not required to trigger a right to seek suppression under state law, the Court of Appeals stated:

It matters not whether undesired results, like involuntary confessions, emanate from the badge of authority or from an ordinary citizen cloaked with actual or perceived superiority. In the eyes of the law of this Commonwealth, the consequence is no less odious. (Slip op., p. 5).

Contrary to the view of the courts below, the decisions of this Court are virtually unanimous that "state action" is required before any claim of suppression on grounds of compelled testimony will be entertained. Such was the direct holding in *Peek v. Commonwealth, supra,* in which a bail bondsman refused to file a bond until a defendant in custody made what amounted to a confession. Despite the existence of circumstances which might have suggested state action, the Court said:

The State is not, and should not be, charged with any undue influence, pressure, sweating, or inducement exercised by a private citizen, acting on his own, not in concert with the officers of the State.

*Id.* at 856. Similarly, in *Hood v. Commonwealth,* Ky., 448 S.W.2d 388 (1969), in which the appellant contended that he should have been given all the warnings and admonitions set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court held that *Miranda* rights do not apply to a citizen arrest.

The thrust of Miranda relates to actions of law enforcement agencies, and not to the actions of private citizens. We have no hesitancy in holding that Miranda does not apply in the instant case.

*Hood,* at 391. Likewise *Jaggers v. Commonwealth,* Ky., 439 S.W.2d 580 (1969), held that

....
We hold that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning

of the Due Process Clause of the Fourteenth Amendment.....
*Colorado v. Connelly,* 479 U.S. at 165–167, 107 S.Ct. at 520–522.

statements made to a person other than a "law enforcement official" were not subject to *Miranda* protection.

These statements were not made to any law enforcement officer, nor were they made when appellant was under arrest. *Id.* at 584.

It should be observed that *Hood* and *Jaggers* and a great many other Kentucky decisions addressing the right against self-incrimination were rendered in the era shortly after *Miranda v. Arizona.* In Kentucky and throughout this nation, *Miranda* represented a change in the law of seismic proportions and the rights it acknowledged went far beyond those which were recognized under the Constitution of Kentucky. Thus the phrase "Miranda rights" became virtually synonymous with the most conceivably far-reaching rights against self-incrimination. Disdainfully, the Court knuckled under in *Meyer v. Commonwealth,* Ky., 472 S.W.2d 479 (1971) (overruled on other grounds by *Short v. Commonwealth,* Ky., 519 S.W.2d 828 (1975)), as follows:

The word "compelled" contemplates the use of "sweating" or other means of coercing a citizen to incriminate himself. Nowhere in any constitution, either Federal or state, is a requirement that officers charged with the investigation of a crime must enlighten the suspect of his rights against self-incrimination. But *Miranda* does just that, and until it is overruled we must try to live with it.

While the foregoing decisions did not directly address Kentucky constitutional law, it appears to have been implicit that there were no greater protections than federal constitutional protections or that state constitutional rights were no more than coextensive with federal rights. In fact, the Court said just that in *Newman v. Stinson,* Ky., 489 S.W.2d 826 (1972):

The Fifth Amendment right against self-incrimination and the right given by Section Eleven of the Kentucky Constitution both arise from a common historical desire to prohibit the employment of legal process to extract from a person's own lips an admission of guilt which would thus take the place of other evidence. 8 Wigmore, Evidence (McNaughton Revision 1961), Section 2263. That the guarantees against self-incrimination of both the Federal and State Constitutions should have the same interpretation as far as possible despite some variance of wording is supported by Wigmore, 8 Wigmore, Evidence, Sections 2252 and 2263, and is affirmed by Schmerber v. California, supra. We conclude therefore that the protection against self-incrimination given by the Fifth Amendment to the United States Constitution is identical with that afforded by Section Eleven of the Kentucky Constitution. *Id.* at 829.

We recognize that *Newman v. Stinson* did not deal with testimonial confessions, but such was clearly within the Court's contemplation as shown by its discussion of the historical parallel between the Fifth Amendment to the Constitution of the United States and Section Eleven of the Constitution of Kentucky. Moreover, an interpretation that Section Eleven requires "state action" is strengthened by analogy to other rights of persons accused of criminal conduct. In *Stone v. Commonwealth,* Ky., 418 S.W.2d 646 (1967), the Court held that evidence obtained by private persons was not subject to exclusion under Section 10. Quoting from *Chapman v. Commonwealth,* 206 Ky. 439, 267 S.W. 181 (1924), the Court said:

It [Section 10] has never been held, however, to embrace or be applicable to a private individual who, through a process of spying or other form of trespass, discloses evidence against another.

*Stone v. Commonwealth* at 650. Similarly, in *Wilson v. Commonwealth,* Ky., 695 S.W.2d 854, 857 (1985), the Court held, though it failed to specify whether it was interpreting federal or state constitutional law, that

in order to establish that a pre-trial confrontation was unduly suggestive, the defendant must first show that the government's agents arranged the confrontation or took some action during the confrontation which singled out the defendant.

From time to time in recent years this Court has interpreted the Constitution of Kentucky in a manner which differs from the

interpretation of parallel federal constitutional rights by the Supreme Court of the United States. However, when we have differed from the Supreme Court, it has been because of Kentucky constitutional text, the Debates of the Constitutional Convention, history, tradition, and relevant precedent. We have admonished against "novel theories to revise well-established legal practice and principle" and stated the prevailing rule as follows:

> While we have decided several recent cases protecting individual rights on state constitutional law grounds, our stated purpose is to do so only where the dictates of our Kentucky Constitution, tradition, and other relevant precedents call for such action. (Citations omitted.)

*Holbrook v. Knopf*, Ky., 847 S.W.2d 52, 55 (1992).

*Newman v. Stinson, supra,* and our prior decisions are clear and we reiterate that Section Eleven of the Constitution of Kentucky and the Fifth Amendment to the Constitution of the United States are coextensive and provide identical protections against self-incrimination. State action is indispensable.

For the conclusion that appellee's statements should be suppressed, the courts below relied to a great extent upon four cases rendered between 1872 and 1924. The trial court extravagantly described these cases as exemplifying the "expansionist interpretation of the right against self-incrimination" thus eliminating the requirement of state action under Section Eleven. The Court of Appeals interpretation differed somewhat as it saw in these decisions an

> ancient doctrine conceived in the common law of this Commonwealth that a confession induced by coercive techniques, including the use of promises or of undue influence, while under the authority of civil as well as police personnel during an interrogation is, indeed, involuntary and inadmissible in a criminal prosecution. (Slip op., p. 4)

The first of these cases is *Young v. Commonwealth*, 71 Ky. (8 Bush) 366 (1872), in which the defendant sought suppression of a statement made by him to the sheriff after having been arrested. The defendant contended, however, that the statement was made at the urging of one working in cooperation with the state and that but for assurances given by the other that he would be better off to make the statement, he would not have done so. In response to the contention that the statements were not voluntary but were made under the influence of hopes and fears held out to him, the Court said:

> The general doctrine is indisputable, that confessions which are "forced from the mind by the flattery of hope or the torture of fear" are considered as made under mental duress, and therefore incompetent as evidence; but whether they are so extorted must depend on the character of the authority, power, or influence by which they are induced; and it will not be presumed that a person having no control over a prisoner, or the charge against him, or authority to make good a promise or execute a threat, could without physical force, or duress at least, so far inspire either hope or fear in his mind as to induce a false confession of his guilt. While therefore it is clear that confessions induced by promises, threats, or advice of the prosecutor or officer having the prisoner in charge, or of anyone having authority over him, or the prosecution itself, or of "a private person in the presence of one in authority," whose acquiescence may be presumed, will not be deemed voluntary, and will be rejected, the rule is generally the reverse in relation to confessions superinduced by indifferent persons, acting officiously, without any kind of authority; and confessions made under such circumstances will be admitted in evidence. (Citations omitted.)

Discerning no error in the trial court's admission of the statement in evidence, the Court concluded:

> Whatever may have been the peril of the appellant, and the effect on his mind of the circumstances which surround him, we can see no sufficient reason for treating the advice of Denson otherwise than as the counsel of a private friend of the defendant, which did not render his subsequent admissions incompetent as evidence, although it may have induced him to make the admissions.

The second of the cases so heavily relied upon is *Rector v. Commonwealth*, 80 Ky. 468 (1883), in which a theft was committed by two persons. After the thieves were arrested and were being returned to the county where the crime had been committed, the victim stated to them that if they would tell him where the stolen property was located, things would go better for them and the victim would not prosecute them "hard." In response to this state of affairs, the Court held:

> It is a general rule that confessions which are induced by hopes or fears raised by the promise or threats of the prosecutor, or of any person having authority over the prisoner at the time, are not considered voluntary, having been made under mental duress, and therefore not competent.

Due to the paucity of facts, it is difficult to say with certainty whether the evidence in *Rector* was excluded on the basis of representations of the victim, a private person, or whether the fact of appellants' custody and a presumed cooperation between the victim and the authorities was decisive.

The next case is *Renaker v. Commonwealth*, 172 Ky. 714, 189 S.W. 928 (1916), where state action was clearly present. In response to appellant's motion to suppress, the Court said:

> To render evidence of such confession incompetent, it must have been influenced by promises, threats, or advice of the prosecutor or officer having the prisoner in charge, or of any one having him in duress or having authority over him.

*Id.* at 932.

Finally is *Baughman v. Commonwealth*, 206 Ky. 441, 267 S.W. 231 (1924), wherein the sixteen-year-old defendant was brutalized by "one of the deputy sheriffs during the course of interrogating him about the crime." *Id.* at 232. The trial judge excluded the defendant's confession as constitutionally infirm but admitted evidence of collateral facts obtained as a result of the confession. On appeal from the conviction, the appellant challenged the admission of this evidence and the court was led to write at length on the admissibility of confessions. It noted that in English history, torture had been administered to extract confessions by duly constituted officers and by ecclesiastical and other voluntary inquisitors. As a result, the Court wrote, a modern rule emerged excluding confessions obtained by duress, coercion, threat, promise of reward or other unlawful means. The theory was that because of the unlawful means, the confession might be false. Such confessions were also to be excluded as a means of judicial condemnation of inhumane methods.

While there was state action in *Baughman*, dictum in the opinion is broad enough to permit the conclusion that state action was not always required; that a confession obtained by private actors engaged in barbarous practices should also be excluded. Of the cases discussed hereinabove, the oldest and most lucid is *Young v. Commonwealth*, and it quite clearly requires state action in ordinary circumstances. However, there is language in *Young* ("or of anyone having authority over him") which is capable of broad construction, but the context generally requires the conclusion that the authority be under color of law. In fact, the Court said that confessions made to "indifferent persons, acting officiously, without any kind of authority" would be admitted in evidence. Nevertheless, all of the cases acknowledge that the use of physical force or some other means which would shock the conscience is intolerable and that statements obtained thereby should be excluded. Moreover, it is doubtful that statements obtained in such a manner would meet the test of relevancy set forth in KRE 401 or survive a *motion to* exclude pursuant to KRE 403.

■ Exclusion of statements or confessions by virtue of our common law tradition which condemns confessions obtained by severe duress or physical force is limited and statements or confessions should be excluded on such grounds only in compelling circumstances. In most cases, one aggrieved by the admission of a statement or confession believed by him to have been unfairly obtained by a private person will be limited to the rights assured in *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).

[Evidence of] the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. .... Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

*Id.,* 476 U.S. at 689, 106 S.Ct. at 2146.

■ The central findings of the trial court, the findings on which it and the Court of Appeals determined that appellant's confession should be suppressed, were that during the questioning, appellee felt intimidated and coerced and that he was led to believe that in exchange for his cooperation, he would not be prosecuted. These findings are woefully insufficient to justify application of the common law rule discussed hereinabove. In the circumstances which prevailed here, our decision in *Peek v. Commonwealth, supra,* is dispositive.

Appellee's complaint on cross-appeal with respect to the Court of Appeals' designation of its opinion as Not to Be Published is rendered moot by our order granting discretionary review and our determination that this opinion should be published.

The opinion of the Court of Appeals is reversed and this cause remanded to the Jefferson Circuit Court for further proceedings consistent herewith.

REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which STEPHENS, C.J., and STUMBO, J., join.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This Court has relied on *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), which is not and should not be considered dispositive of the issues in this case. *Colorado v. Connelly* is factually inapposite in critical particulars. Further, as I will document, it turns on different constitutional principles than those that should control our decision here. If the only value our forbearers intended to constitutionalize by the privilege against compulsory self-incrimination was to deter oppressive police activity, it would be proper to confine the privilege to the activities of public officials, and to confine our discussion to standards that would be appropriate in deciding when police activity is so oppressive self-incriminating statements should be suppressed. But once we recognize that the *primary* purpose of this inalienable right was not to deter police activity but to establish standards of decency and respect for human dignity that must not be transgressed in a free society, we must conclude the purpose of this constitutional clause is to deny the use of coerced confessions from whatever source, whether public or private: whether the sheriff, the church inquisitor, the local lynch mob, or rampaging vigilantes. The problem with the Majority Opinion is that we have failed to recognize that the privilege is there, whether the coercion is public or private, but *different limitations* apply to what activities can be tolerated from the police before evidence should be suppressed than apply where private persons are involved.

When Thomas Jefferson articulated in *The Declaration of Independence* that we "are endowed by [our] Creator with certain unalienable rights," and that "to secure these rights governments are instituted among men," when, speaking for all of us, he proclaimed, "I have sworn upon the altar of God eternal hostility against every form of tyranny of the minds of man," [1] the scope of this vision was not limited to deterring oppressive police activity.

In *Colorado v. Connelly,* Connelly, on his own volition, approached a police officer on the streets of downtown Denver and stated that he had committed a murder and wanted

1. Letter to Dr. Benjamin Rush dated September 23, 1800.

to talk about it. He was given *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and he then provided the details, which were later confirmed. The compulsion involved, if it should be viewed as such, was the power of his own conscience, and compulsion from a "third party" was involved only in the sense Connelly believed that he was following the "voice of God." He confessed because he believed "God's voice had told him either to confess or to commit suicide." He questioned the right to use the confession because he had had psychiatric problems which, he claimed, interfered with the exercise of his own free will. It takes no stretch of the imagination to conclude that this is not the situation our constitutional forbearers, state and federal (and I perceive no difference in this respect), had in mind when they constitutionalized the privilege against compulsory self-incrimination. In *Colorado v. Connelly* it would have been enough to hold that one's own psyche cannot unconstitutionally compel his confession. But Chief Justice Rehnquist's opinion in *Colorado v. Connelly* goes further to generalize that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. at 165, 107 S.Ct. at 522, 93 L.Ed.2d at 483. He states:

> The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause. 479 U.S. at 166, 107 S.Ct. at 521, 93 L.Ed.2d at 483.

This has been misperceived as authority that the citizen's right to constitutional protection against compulsory self-incrimination does not extend to "outrageous behavior by a private party." Actually the opinion simply restates the longstanding principle that rights guaranteed by the Federal Constitution only apply in state prosecutions through the Fourteenth Amendment, which requires that "state action" be involved in the violation of such rights. All that *Colorado v. Connelly* really holds is that unless there is state action there is no federal question. Other language in the opinion that has been read to

suggest that the scope of constitutional protection against the use of coerced confessions is limited to the activities of governmental officials, and suggesting there is historical precedent for refusing to apply it to the coercive activities of private parties, however outrageous, is simply a failed constitutional analysis.

Far more persuasive than Chief Justice Rehnquist's brief and undocumented generalizations in *Colorado v. Connelly* about the background of the Fifth Amendment's self-incrimination clause are the numerous opinions of sister states with constitutional clauses similar to our own applying protection to confessions coerced by private persons. See cases cited in the Appellee's Brief, pp. 17–19. A few in particular that I would urge my colleagues to consider are *Fisher v. State*, 145 Miss. 116, 110 So. 361 (1926); *Lawton v. State*, 152 Fl. 821, 13 So.2d 211 (1943); and *State v. Bowe*, 77 Hawai'i 51, 881 P.2d 538 (1994).

Recognizing there must be some reasonable limits on the length of this dissent, I will limit my discussion to just a few of the historical resources refuting this failed constitutional analysis of the self-incrimination privilege. An excellent discussion is found in Pittman, *The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America*, 21 Va.L.Rev. 763 (1935), which includes this quote from English History found in the "Case of the Army ['Cromwell's Army'] Truly Stated" (1647):

> That it be declared that *no person* or court shall have power or be permitted to enforce any person to ... answer to any Interrogatories against himself in any criminal cause. *Id.* at 773. (Emphasis added.)

Another excellent source is a lengthy article found in the Harvard Law Review, *Developments in the Law—Confessions*, 79 Harv. L.Rev. 935–1120, see "Voluntariness", pp. 954–84, which, *inter alia*, discusses the appropriate rule where pressure to confess comes from the employer as a "person in authority" (our present problem), and then concludes:

A confession obtained by threats and beatings is, of course, inadmissible without reference to the 'authority' of the assailant. *Id.* at 958.

To quote from a recent publication in the Harvard Law Review, *Right Against Self-Incrimination—Involuntary Confessions,* 101 Harv.L.Rev. 179 (1987), citing supporting cases and authorities:

The privilege against self-incrimination ... is founded on perhaps the most basic constitutional value, "the respect a government—state or federal—must accord to the dignity and integrity of its citizens." However, any person who coerces a confession necessarily violates a suspect's dignity by overriding his free will, and the state participates in that violation by allowing coerced statements to be used as evidence. Therefore, admitting coerced confessions, no matter who coerced them, is fundamentally unfair.

Admitting confessions coerced by third parties is also contrary to precedent. Both state and federal courts have ruled that confessions coerced by private parties or foreign policemen are inadmissible, and the Supreme Court itself excluded a confession coerced by a foreign policeman in *Bram v. United States* [168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) ]. *Id.* [168 U.S. at 540–45, 18 S.Ct.] at 186–87. (Citations omitted.)

As stated by Justice Brennan in his dissenting opinion in *Colorado v. Connelly:*

This Court's assertion that we would be required "to establish a brand new constitutional right" to recognize the respondent's claim, [citation omitted], ignores 200 years of constitutional jurisprudence. 479 U.S. at 176, 107 S.Ct. at 526–27, 93 L.Ed.2d at 490.

Justice Brennan cites, *inter alia,* "W. Hawkins, Pleas of the Crown (6th ed 1787): '[a] confession, therefore, whether made upon an official examination or *in discourse with private persons,* which is obtained from a defendant ... is not admissible evidence; for the law will not suffer a prisoner to be made the deluded instrument of his own conviction.'" *Id.*

Our state constitutional clause protecting against compulsory self-incrimination is drawn from a common law heritage and the text of other state constitutions, not the federal Bill of Rights. See Gormley and Hartman, *The Kentucky Bill of Rights: A Bicentennial Celebration,* 80 Ky.L.J. 1 (1990–91). But textual differences between the federal and state constitutions is not the issue here. There is no less reason why in a federal prosecution the confession should not be suppressed if coerced by private persons by physical abuse or intimidation than in a state prosecution. I fully agree that *Miranda* should not apply to cases involving the activities of private persons, and that cases involving only persuasion or inducement to confess by private persons, even if there is an element of deception, do not fall within the privilege. But historical precedent for federal as well as state constitutional law calls for suppression when truly the accused has been coerced into confessing.

Our Majority Opinion quotes from *Newman v. Stinson,* Ky., 489 S.W.2d 826 (1972). The case holds parallel interpretation of the state and federal clauses was appropriate for the issue presented. But the quote is out of context. *Newman v. Stinson* holds, quite simply, that requiring a breathalyzer and using evidence of refusal is non-testimonial in nature, and that this is not covered by either the Fifth Amendment or Section Eleven. The decision in *Newman v. Stinson* is beside the point.

It is important to understand why the United States Supreme Court has held that state action is required before Fifth Amendment protection applies in state cases. It is because the Fifth Amendment applies to state prosecution only because of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). It is the Fourteenth Amendment that requires state actors, not the Fifth Amendment. However, the question before us is not what the United States Supreme Court would say if asked to decide whether Cooper was protected by the Federal Constitution against the use of his statements. It is whether the law of our state, Kentucky, as expressed in the constitutional mandate in

Section Eleven of the Kentucky Constitution and our cases interpreting Kentucky's self-incrimination privilege, is limited to official misconduct or extends to intolerable behavior used by private persons to extract a confession.

Clearly, it does. Given evidence a confession is coerced, our Kentucky Constitution, Section Eleven, since 1792 and independent of the Federal Constitution, requires it should be suppressed,[2] and this principle is not limited: it extends to voluntary inquisitions in which no state action is implicated in appropriate circumstances. The four seminal cases in Kentucky cited in the Majority Opinion are more than enough to compel this conclusion: *Young v. Commonwealth,* 71 Ky. (8 Bush.) 366 (1872); *Rector v. Commonwealth,* 80 Ky. 468 (1882); *Renaker v. Commonwealth,* 172 Ky. 714, 189 S.W. 928 (1916); and *Baughman v. Commonwealth,* 206 Ky. 441, 267 S.W. 231 (1924). The Majority Opinion states that in *Baughman v. Commonwealth* our Court

> ... noted that in English history, torture had been administered to extract confessions by duly constituted officers *and by ecclesiastical and other voluntary inquisitors.* As a result, the [Baughman] Court wrote, a modern rule emerged excluding confessions obtained by duress, coercion, threat, promise of award or other unlawful means. The theory was that because of the unlawful means, the confession might be false. Such confessions were also to be excluded as a means of judicial condemnation of inhumane methods. (Majority Op., p. 79, emphasis added.)

Yet the Majority Opinion has concluded that Section Eleven does *not* apply unless official misconduct is involved. This decision is refuted by the cases it cites.

No doubt recognizing the enormity of denying protection against the coercive activities of private persons in all circumstances, no matter how coercive, the Majority softens the denial of the constitutional privilege by advising the accused to look for help to other rules of evidence, specifically KRE 401 and

403. Majority Op., p. 79. Rule 401 and 403 address excluding evidence because it is either irrelevant or is not sufficiently probative of the issues presented. But a coerced confession is both highly relevant and extremely probative of the guilt of the accused, and the method by which it is obtained makes it no less so. Had the evidence here been that the appellee was brutally beaten by his UPS supervisors to force him to give evidence against himself, the evidence would have been no less relevant and probative. And while such methods sometimes raise questions of credibility, credibility is not grounds for exclusion, but an issue for the jury who hears the confession, and the use of force will not affect credibility where there are corroborating circumstances. KRE 401 and 403 are not viable alternatives for the constitutional right to be protected here, the privilege against the use of coerced self-incrimination whether the confession is extracted by public officials or voluntary inquisitors. It only confuses the law of evidence to suggest otherwise.

A trial is a search of the truth. The rules of evidence are an attempt to construct neutral principles to arrive at the truth. Rare indeed is there a reason strong enough to override this principle. But suppressing self-incriminating evidence coerced from an accused is one of those rare instances developed in our law where suppressing the means used for obtaining the evidence is more important than the search for the truth. That is why, as illustrated by *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), when the proof is clear that the evidence has been coerced, truth is not to be considered.

> The aim of the requirement of due process [in suppressing coerced confessions] is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false. *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289–90, 86 L.Ed. 166 (1941).

---

**2.** "He ['the accused'] cannot be compelled to give evidence against himself, . . . ." Ky. Const.,

Section 11.

The arena where it matters whether the confession has been extracted through misconduct of public officials or the activities of private actors is where it comes to deciding what set of circumstances call for applying the constitutional principle. It is here that, quite properly, over time we have evolved higher and different standards in judging whether to suppress for police activity than the standards that are suitable in judging the inducements used by private persons to extract self-incriminating statements. For instance, promises not to prosecute made by private persons who cannot speak for the government ordinarily do not constitute circumstances that require constitutional protection. Nor does the threat to withhold helping the accused make bond (*Peek v. Commonwealth*, Ky., 415 S.W.2d 854 (1967)). What has that to do with cases involving pressure from those in authority with power to command compliance, whether public or private, or lynch mobs applying force or duress, or private persons who confine and mistreat the accused until he confesses? The constitutional principle applies to the action of these volunteers as clearly as it does to those involved in state action. How can we think otherwise?

The real problem with this case is not whether there is no self-incrimination privilege. It is whether or not the circumstances involved here are such that the privilege should apply, and the evidence should be suppressed. In resolving this problem, how the United States Supreme Court might decide to interpret the Fifth Amendment, or to apply it in state prosecutions covered by the Due Process Clause, is useful in interpreting our own Kentucky constitutional protection only where the federal case is persuasive. And *Colorado v. Connelly* is certainly not persuasive where confessions coerced by private persons are concerned. There is no reason to abandon or discard our Kentucky constitutional protection and the language of our own precedents because the United States Supreme Court might hold differently. Further, there is really no good reason why the United States Supreme Court would interpret Fifth Amendment protection inapplicable to a federal prosecution in circumstances, unlike *Colorado v. Connelly*, where

there is proof of intimidation used by private persons to compel a confession. Comparing the language applied to the situation presented in *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), one would conclude otherwise.

It is obvious that the Majority on this Court is persuaded that the trial court erred in deciding the particular pressures applied to this defendant to obtain his self-incriminating statements were not so compelling, or so improperly coercive, that the statements should have been suppressed. This is not a case where UPS security guards used brute force to extract the self-incriminating statements, and while there were strong inducements used to persuade the appellant to confess, the question of whether they were so strong as to trigger constitutional protection is a difficult one.

Had the Majority Opinion decided that, given the facts of this case as the trial court found them, they were insufficient to trigger the protection against self-incrimination in Section Eleven, it would be a judgment call. I might disagree but it would be a difficult decision with which to disagree. This Court may well have concluded as a matter of law that the pressure and inducements used here by private persons, even considering the pressure inherent from the circumstances of employment, did not constitute the kind of improper coercion our Kentucky Constitution requires to render a confession inadmissible, using the example provided by *Peek v. Commonwealth, supra*, as a relevant precedent.

Had the Majority Opinion decided the evidence was insufficient to support the trial court's findings of fact as to what occurred by way of coercing the defendant to confess, this again might be an area where judicial minds might reasonably disagree. The trial court's version of the facts relies heavily on the defendant's testimony. Since credibility falls within the province of the trial court, I would probably, somewhat reluctantly, leave the facts as the trial court found them. Nevertheless, I could well understand had the Majority reached this result. But the one totally unacceptable answer is to use this case to reject, totally, constitutional protec-

tion for the accused simply because a confession is forced from the lips of the accused by private persons.

When in the future a law professor will need a case to illustrate how "hard cases made bad law," he can cite this case. The issue should be *whether* the constitutional principle should apply to the *methods* used here by UPS personnel to induce Cooper to confess, not whether we have a clause in our Kentucky Constitution protecting our citizens against compulsory self-incrimination, whether from public officials or private oppressors.

The privilege against compulsory self-incrimination extends to voluntary inquisitions in which no state action is implicated when the coercive interrogation is conducted by persons reasonably appearing to the accused as "having him in duress or having authority over him." *Renaker v. Commonwealth,* 172 Ky. 714, 189 S.W. 928, 932 (1916). The historical understanding of how Kentucky interprets our protection against self-incrimination is thus stated in *Young v. Commonwealth,* 71 Ky. (8 Bush) 366, 370 (1872):

> "The general doctrine is indisputable, that confessions which are 'forced from the mind by the flattery of hope or the torture of fear' are considered as made under mental duress, and therefore incompetent as evidence; but *whether they are so extorted must depend on the character of the authority, power or influence by which they are induced. Id.* Emphasis added.

To deny Section Eleven protection unless there is misconduct by public officials is to lose sight of its historical underpinnings, to lose sight of the reasons why we have this self-incrimination clause in our Kentucky Constitution. Further, to relegate protection of the accused in these circumstances to rulings the trial court might consider under KRE 401 or KRE 403 is an error of monumental proportions.

Therefore, I dissent.

STEPHENS, C.J., and STUMBO, J., join.