Kareem Ali HENRY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000767–DG.

Supreme Court of Kentucky.

Dec. 18, 2008.

Daniel T. Goyette, Louisville Metro Public Defender, Bruce P. Hackett, Deputy Appellate Defender Of the Jefferson District, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of the Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

When Louisville Metro police officers apprehended Kareem Henry outside a service station, they had reason to believe that he had, a few minutes before, discarded a handgun in the vacant lot adjacent to the store. Having frisked and secured Henry, one of the officers asked him, three times, "Where is the gun?" Henry made potentially incriminating responses and later, facing assault, burglary, and illegal possession of a firearm charges, he moved to suppress the statements as having been elicited without the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In separate rulings, two divisions of the Jefferson Circuit Court relied on the "public safety" exception to the *Miranda* rule as announced by the United States Supreme Court in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984),

and denied Henry's motion to suppress. Henry then pled guilty to assault, burglary, drug and paraphernalia possession, tampering with physical evidence, and to two counts of illegal possession of a firearm, but reserved his right to appeal the suppression rulings. The Court of Appeals affirmed, and we granted Henry's petition for discretionary review primarily to consider the lower courts' adoption and application of the *Quarles* public safety exception. We now affirm all convictions except one of the firearm possession convictions and hold that the public safety exception recognized in *Quarles* is consonant with our own Kentucky constitutional protections. We reverse, however, the second firearm possession conviction as a violation of the Double Jeopardy Clause.

## RELEVANT FACTS

The record indicates that on January 14, 2004, Louisville Metro police received a complaint from one of Henry's female acquaintances that he, Henry, had grown angry when she asked him to leave her apartment and had struck her on the forehead with a gun. The victim named Henry as her assailant, identified his photograph, and described his vehicle, a maroon 1990 Plymouth. The next day two officers familiar with Henry went to a Louisville motel where he was known to have recently occupied a room. They recognized Henry's car in the motel parking lot, and as they were inquiring of the manager whether Henry was a guest, a motel security guard interrupted to say that he had just chased Henry from the property and had seen him as he ran to his car throw what appeared to be a handgun over the fence that divided the motel from a neighboring service station. Both businesses were located near the intersection of Bardstown Road and Goldsmith Lane in Louisville, a busy commercial area. The officers promptly reported the abandoned weapon to the police dispatcher and pursued Henry a short distance in the direction the guard had indicated.

Having failed to catch sight of Henry or his vehicle, the officers were returning to the motel when they observed Henry's car pull into the service station and saw Henry exit the vehicle and make his way around the side of the building toward the open area and the fence where he was said to have thrown the gun. In a matter of moments the officers had pulled into the service station; apprehended, frisked, and handcuffed Henry; and secured him in the back of their cruiser. It was then that one of the officers, without reciting the *Miranda* warnings, asked Henry where the gun was. Henry said that he had two guns, a .45 and a .22. The officer then asked where the gun was he had thrown over the fence, and Henry denied having thrown a gun and added that he no longer had the .45, that he had "put it up." In response to a third request for the gun's location, Henry said that he had sold it. During the frisk, the officer discovered a crack pipe in Henry's pocket, and a subsequent warrants check revealed an outstanding warrant for his arrest. For both reasons, the officers formally arrested Henry, and pursuant to the arrest they searched the passenger compartment of his car. There they found and seized .45 caliber bullets. About four hours later, assisting officers found a matching .45 caliber handgun near the fence in the area the security guard had identified.

Based on these facts, on February 25, 2004, a Jefferson County Grand Jury indicted Henry (04–CR–00658) for the January 14th assault, for possession of a firearm by a convicted felon, for possession of cocaine and drug paraphernalia, and for tampering with evidence. The case was assigned to Division Two of the Jefferson Circuit Court. As it happened, the .45 caliber handgun had the same serial number as a gun that had been stolen on

January 7, 2004 from the home of another of Henry's acquaintances. Consequently, on March 18, 2004, Henry was separately indicted (04–CR–00884) for burglary and was again charged with possession of a firearm by a convicted felon. That case was assigned to Jefferson Circuit Court Division Fifteen (now Division Twelve). In both cases Henry moved to suppress his statements about the gun due to the absence of *Miranda* warnings. In the assault case, he also moved to suppress the bullets seized from his car on the ground that the warrantless car search was not justified as a search incident to his arrest. When those motions were denied Henry entered a combined guilty plea to the charges in both cases, in exchange for which the Commonwealth recommended concurrent sentences totaling ten years in prison. In both cases, judgments in accord with that recommendation were entered on February 10, 2005.

On appeal, Henry renews his claim that his statements and the evidence seized from his vehicle should be suppressed and, in addition, contends that the constitutional guarantee against double jeopardy bars his being convicted twice for the illegal possession of the .45 caliber handgun. We agree with this last contention and remand to the Jefferson Circuit Court for an appropriate modification of the judgment in the second case involving the burglary (04–CR–00884). We begin with the suppression issues, however, and conclude that the trial courts correctly declined to suppress both Henry's statements and the evidence seized from his car.

### ANALYSIS

**I. The Trial Courts Correctly Refused To Suppress Henry's Statements Because the Public Safety Exception to *Miranda* Applies.**

▮ As the parties correctly observe, our review of a suppression ruling requires a two-step determination. . . . The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review.

*Cummings v. Commonwealth,* 226 S.W.3d 62, 65 (Ky.2007) (citing *Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004)). Here, although Henry's suppression hearing description of his arrest differed in certain particulars from that of the arresting officer, there is no real dispute about the pertinent facts as summarized above. The officers had warning that Henry had thrown a gun into the area they later saw him approaching—an area open to pedestrian traffic between two businesses—and immediately upon apprehending Henry one of the officers, without first giving the *Miranda* warnings, asked him where the gun was. Henry contends that the apparent *Miranda* violation requires that his unwarned statements be suppressed. We disagree.

▮ Under the Fifth Amendment to the United States Constitution, of course, Henry has a right not to be compelled to incriminate himself. *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). To protect that right and to guard against the compulsion inherent in custodial circumstances the United States Supreme Court established, in *Miranda v. Arizona, supra,* the now familiar rule that a defendant's statements during custodial interrogation will generally not be admissible at trial unless prior to the statements the defendant was advised of *Miranda's* four basic warnings: (1) that the suspect has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attor-

ney, and (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Dickerson v. United States, supra.*

In *New York v. Quarles, supra,* however, the Supreme Court recognized an exception to the *Miranda* warning requirement. In *Quarles,* a police officer was attempting to apprehend a rape suspect, Quarles, believed to be armed, in a grocery store. The suspect fled to the back of the store, and the officer momentarily lost sight of him. When moments later Quarles was captured, his shoulder holster was empty, and without giving the *Miranda* warnings, the officer asked him where the gun was. Quarles indicated a nearby box, where, indeed, the officer found a gun. The New York Court of Appeals affirmed the suppression of the gun and Quarles's pre-warning statements as inadmissible under *Miranda.* The United States Supreme Court reversed. It held

> that on these facts there is a "public safety" exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved.... Whatever the motivation of the individual officers in such a situation, we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety.

*New York v. Quarles,* 467 U.S. at 655–56, 104 S.Ct. 2626. We agree with the courts below that this "public safety" exception to *Miranda* applies to Henry's case, which is strikingly similar to *Quarles.* The officer here, as in *Quarles,* had reason to believe that Henry had abandoned a gun in an

area accessible by the public, and as in *Quarles,* the officer limited his pre-warning questions to those designed to locate the gun and remove the hazard. Because the officer's questions were reasonably prompted by a concern for public safety, under *Quarles* they did not violate *Miranda*'s warning requirement.

■■■ Against this conclusion, Henry raises three arguments. He contends, first, that regardless of *Miranda* and its exceptions, his statements should be suppressed as the fruit of an illegal detention, the argument apparently being that the officers lacked a reasonable basis for stopping him and questioning him at all. Not only was this argument not presented to the trial courts and so not preserved for review, but it is patently meritless. At the very least, the assault complaint and the report that Henry had abandoned a gun authorized the officers to make an investigatory stop, *Adkins v. Commonwealth,* 96 S.W.3d 779 (Ky.2003) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), and the gun report as well as the fact that Henry was stopped in the area where a gun was thought to be located justified their beginning the stop with a weapons frisk. *Id.* The discovery of the crack pipe and the outstanding warrant then justified Henry's arrest. Henry's statements were not the fruit of an illegal detention.

Henry next contends that the officers were not truly concerned for public safety, since they pursued him briefly before they returned to look for the gun, and that public safety here did not require the sacrifice of his *Miranda* rights, since the area where the gun was thought to be could have been cordoned off while the police searched. The officers' brief attempt to find Henry does not suggest a lack of concern for public safety because he was the person best able to tell them where the

gun was located. Indeed, their immediate request for additional officers to search for the gun suggests public safety was of paramount concern. As the *Quarles* Court emphasized, moreover, the availability of the "public safety" exception does not depend on the officer's subjective motivation, but rather on the circumstances reasonably prompting a safety concern. That concern was reasonably prompted here by a credible report that Henry had abandoned a gun in an open, public place. The concern was reasonable notwithstanding the fact that an alternative approach to protecting the public was available. The *Quarles* majority faced a similar argument that rather than questioning Quarles the police officers could have cordoned off the grocery store,—*Quarles, supra,* (Justice Marshall dissenting)—but it nevertheless held that *Miranda* did not require such alternative action and that questions limited to locating the gun were reasonably prompted by the obvious safety concerns that abandoned guns pose.

Finally, Henry argues that even if the officer's questions did not violate the Fifth and Sixth Amendments as interpreted in *Miranda* and *Quarles,* they did violate Section Eleven of the Kentucky Constitution, which, like those amendments, offers protection against self-incrimination and ensures the right to counsel. Henry urges us to construe Section Eleven more broadly than the corresponding federal provisions and in particular as being incompatible with the "public safety" exception announced in *Quarles.* We have held, however, as a general rule, that Section Eleven is "coextensive" with the corresponding federal constitutional protections. *Commonwealth v. Cooper,* 899 S.W.2d 75, 78 (Ky.1995) ("Section Eleven of the Constitution of Kentucky and the Fifth Amendment to the Constitution of the United States are coextensive and provide identical protections against self-in-

crimination."); *Cain v. Abramson,* 220 S.W.3d 276, 280–81 (Ky.2007) ("The right of counsel guaranteed by Section 11 of the Kentucky Constitution is no greater than the right of counsel guaranteed by the Sixth Amendment of the United States Constitution"). Departure from this general rule, we have indicated, is appropriate and will be entertained only where the "Kentucky constitutional text, the Debates of the Constitutional Convention, history, tradition, and relevant precedent" call for it. *Commonwealth v. Cooper,* 899 S.W.2d at 78.

Henry has failed to identify anything in the text of Section Eleven or in our Kentucky tradition that would compel departure from the United States Supreme Court's lead in *Quarles.* He relies on *Youman v. Commonwealth,* 189 Ky. 152, 224 S.W. 860 (1920), a prohibition era case construing Section Ten of our Constitution, which, like the federal Fourth Amendment, limits the state's search and seizure authority. In *Youman,* police officers seized evidence during a warrantless search of Youman's home, and the Court held that the illegally obtained evidence should not have been admitted at Youman's trial. Although in reaching its conclusion the Court relied heavily on United States Supreme Court decisions construing the Fourth Amendment, Henry asserts that *Youman* represents an independent Kentucky tradition of excluding tainted evidence not simply to deter police misconduct but more broadly to ensure that courts do not become implicated in constitutional violations.

■ This single, factually dissimilar case is far too thin a reed to support a departure from *Quarles.. Quarles* did not concern an exception to the exclusionary rule, but considered rather whether Quarles's unwarned statements elicited by

the officer's public safety questions were tainted at all. It concluded that they were not tainted, and thus that the exclusionary rule simply did not apply. Even if Kentucky's exclusionary rule were broader than the federal one, therefore (and it is not, *Crayton v. Commonwealth*, 846 S.W.2d 684 (Ky.1992)), that fact would not render *Quarles* inconsistent with Kentucky law. On the contrary, our pre-*Miranda* cases construing Section Eleven did not anticipate *Miranda*, and our cases since that landmark decision have consistently indicated that the *Miranda* requirements are at, if not beyond, the outer boundary of protections afforded by Section Eleven. *Hourigan v. Commonwealth*, 962 S.W.2d 860 (Ky.1998). The Supreme Court's construction of *Miranda*, therefore, is unlikely to conflict with our law, and Henry has demonstrated no conflict in this case. Henry having failed to justify a departure from *Quarles* under Kentucky law, we conclude that the *Quarles* "public safety" exception to *Miranda* is not precluded by Section Eleven and that the courts below correctly applied that exception when they ruled that Henry's statements in response to the officer's "where is the gun?" questions were admissible.

## II. The Trial Court Correctly Refused To Suppress Evidence Seized From Henry's Car Because His Recent Occupancy Of The Car Rendered Valid A Search Of It Pursuant to Henry's Arrest.

■ Henry next contends that the trial court erred by refusing to suppress the evidence seized from his automobile. As noted above, the officers searched the car after they had arrested Henry for drug and paraphernalia possession and in the car they discovered ammunition for the handgun later found in the open lot. The trial court ruled that under *Thornton v. United States*, 541 U.S. 615, 124 S.Ct.

2127, 158 L.Ed.2d 905 (2004), the car search was a valid incident of Henry's arrest and therefore that the seized ammunition was admissible. Henry contends that the trial court misapplied *Thornton* or, again, that Kentucky law precludes the car search in this case even if federal law does not. With both of these contentions, we disagree.

As Henry notes, in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that

> when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest.

*Thornton v. United States*, 541 U.S. at 617, 124 S.Ct. 2127. In *Thornton v. United States, supra*, the Court held that "*Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." 541 U.S. at 617, 124 S.Ct. 2127. Consequently, we recently held that

> once an officer lawfully arrests an automobile's "recent occupant," the officer may search the automobile's passenger compartment as a search incident to arrest.

*Rainey v. Commonwealth*, 197 S.W.3d 89, 93 (Ky.2006) (citing *Thornton*). *See also Penman v. Commonwealth*, 194 S.W.3d 237 (Ky.2006) (same).

In this case, the officers observed Henry leave his vehicle and moments later stopped him, discovered the crack pipe, arrested him for drug possession, secured him in the back of the police cruiser, and searched his vehicle. The trial court ruled that when the officers contacted him Henry was a "recent occupant" of his vehicle and that under *Thornton* their search of

the vehicle was a lawful incident of Henry's arrest. Henry contends that because at the time of the search he was secured in the back of the police cruiser and could not reach into his vehicle either to arm himself or to destroy evidence, the grounds for a *Belton* search did not exist and the search of his vehicle was therefore unlawful. We rejected this argument in *Rainey, supra,* noting that the arrestee was similarly detained prior to the search in *Thornton,* and yet the Supreme Court held that "*Belton* govern[ed]." Like *Rainey,* this case is on all fours with *Thornton,* and thus we agree with the trial court and the Court of Appeals that the search of Henry's vehicle did not violate his rights under the federal Constitution.

■ Henry next contends that even if there was no federal violation, the search of his vehicle violated his right under Section Ten of the Kentucky Constitution to be free from "unreasonable search and seizure." Again, however, the general rule is that we will construe Section Ten consonant with the Fourth Amendment absent a compelling reason in our Constitution, tradition, and precedents to diverge from it. *Holbrook v. Knopf,* 847 S.W.2d 52 (Ky. 1992). Henry has failed to identify such a reason. He relies on *Clark v. Commonwealth,* 868 S.W.2d 101 (Ky.App.1993), in which the Court of Appeals held that *Belton* did not apply where the arrest was for a traffic violation and where, as in this case, the arrestee was secured in the police cruiser prior to the search. Recent United States Supreme Court decisions have undermined both of those holdings. In *Arkansas v. Sullivan,* 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001), the Court observed that *Belton* applies to traffic violation arrests. And, as noted, in *Thornton v. United States, supra,* the Court applied *Belton* to "recent occupant" arrests even where the arrestee was se-

cured prior to the search. *Clark* is thus no longer consistent with Fourth Amendment law. In effect, Henry contends that even if *Clark's* interpretation of federal law proved erroneous it remains a valid interpretation of Section Ten of the Kentucky Constitution. *Clark* did not discuss Section Ten, however, much less purport to distinguish it from the federal law at issue in *Belton,* and so *Clark* does not provide the sort of compelling reason we have required before departing from federal precedent in construing comparable state constitutional protections. In *Rainey v. Commonwealth, supra,* accordingly, we rejected a similar argument based on *Clark* and held that, like the Fourth Amendment, Section Ten permits a vehicle search incident to the arrest of a recent occupant even where the arrestee has been secured away from the vehicle. *Clark* having thus been rendered obsolete, we hereby expressly overrule it.

Finally, Henry notes Justice Scalia's concurring opinion in *Thornton,* in which he discusses the tension between that case and *Belton.* In *Belton,* the Court justified the auto search incident to arrest largely as a means of preventing the arrestee from arming himself or destroying evidence. That rationale could not justify the search in *Thornton,* Justice Scalia argued, because once the arrestee had been secured in the police cruiser those dangers were virtually extinguished. In those circumstances a better rule than the carte blanche *Belton* search, Justice Scalia asserted, is one limiting vehicle searches to cases where there is reason to believe that the vehicle contains evidence of "the crime of arrest," 541 U.S. at 629, 124 S.Ct. 2127. Henry urges us to adopt this limitation pursuant to Section Ten, but we decline to do so at this time, anticipating Supreme Court guidance in the near future and recognizing that the limitation would make

no real difference in this case.[1] Indeed, even were we to adopt Justice Scalia's approach, the officers would have been justified in searching Henry's car for additional evidence related to the crime of arrest, possession of drug paraphernalia.

### III. The Double Jeopardy Clause Precludes Henry's Being Twice Convicted For Possessing The Same Firearm.

■ Finally, as noted above, both of Henry's indictments included illegal possession of a firearm charges based on Henry's possession of the .45 caliber handgun; first when he stole the gun in January 2004 and again when he threw it into the vacant lot in February of that year. Henry's guilty plea simply recites the indictments with the result that in both cases he was convicted of the firearm offense. Henry maintains that the constitutional guarantee against double jeopardy precludes his double conviction for what amounts to a single offense. We agree.

■ As Henry correctly observes,

uninterrupted possession of the same contraband over a period of time is but one offense constituting a continuing course of conduct, precluding convictions of multiple offenses for possession of the same contraband on different dates.

*Fulcher v. Commonwealth,* 149 S.W.3d 363, 376 (Ky.2004). Because Henry's possession of the handgun was not interrupted by legal process it thus constituted a single offense for which Henry should not have been indicted and convicted a second time.

Henry did not raise this issue in the trial court, however, and the Court of Appeals ruled that his plea bargain effected a waiver of the constitutional right. Although we agree with the Court of Appeals that an express waiver of one's right to avoid double jeopardy in exchange for some benefit would preclude a subsequent double jeopardy challenge, there was no express waiver here. Moreover, the United States Supreme Court has held that where, as here, the double jeopardy violation is clear from the record without the need for additional fact finding, a guilty plea does not preclude subsequent relief. *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (citing *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)). We agree with Henry, therefore, that his second conviction for illegal firearm possession in case number 04–CR–00884 must be reversed.

### CONCLUSION

In sum, in denying Henry's motion to suppress the statements he made in response to the officer's "Where is the gun?" questions, the trial courts correctly applied the *New York v. Quarles* public safety exception to *Miranda,* an exception that applies as well under Section 11 of our Kentucky Constitution. Also correct was the trial court's refusal to suppress bullet evidence seized from Henry's car, inasmuch as the search of the car was valid pursuant to *Thornton v. United States,* incident to Henry's arrest. We thus affirm in its entirety the February 10, 2005 Judgment of the Jefferson Circuit Court in case number 04–CR–00658. Because Henry should not have been convicted and sentenced a second time for his illegal possession of the .45 caliber handgun, however, we vacate the Judgment in case number 04–CR–00884 and remand to Jefferson Circuit Court Division Twelve for entry of

---

1. That guidance is apt to be not long in coming, as the Supreme Court has recently granted certiorari in a case raising this issue. *See* *State v. Gant,* 216 Ariz. 1, 162 P.3d 640 (2007), *cert. granted,* —— U.S. ——, 128 S.Ct. 1443, 170 L.Ed.2d 274 (2008).

an amended Judgment excluding the redundant offense and sentence. In all other respects, the Judgment in that case is affirmed.

MINTON, C.J.; CUNNINGHAM, SCOTT, and VENTERS, JJ., concur. NOBLE, J., concurs in part and dissents in part by separate opinion. SCHRODER, J., not sitting.

Opinion by Justice NOBLE, concurring in part and dissenting in part.

I concur with the majority opinion reversing on the double jeopardy claim, but dissent as to the other convictions.

The facts of this case simply do not support application of the public safety exception set forth in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), to abrogate the rights of a defendant set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While *Quarles* articulates a good rule of law, it is not to be applied automatically any time a defendant may throw down a weapon or other contraband that might be harmful to the public. The intent of the ruling in *Quarles* is to actually *protect* the public or the police officers chasing a defendant from immediate danger, not to give officers an automatic excuse to circumvent the *Miranda* warnings.

In *Quarles*, officers attempted to arrest a rape suspect who the victim claimed was armed with a gun. As the officers chased Quarles, they lost sight of him for a few seconds in the back of the store where they had found him. When he was captured moments later, he was wearing a shoulder holster which was empty. Based on the victim's claim that he was armed, and given that his shoulder holster was then empty, the officers immediately asked for their own protection and the protection of the public where the gun was, without

giving the *Miranda* warnings. Quarles indicated a nearby box, and the gun was *immediately* retrieved. Obviously, the officers did not know where the gun was, and equally obvious, they needed to remove the potential threat then and there.

This case differs significantly. Here, the police knew where the gun was *before* they tried to apprehend the Appellant. While looking for Appellant at the motel where he was said to be staying, they were approached by a security guard who told them he had seen Appellant throw a handgun over a fence that ran between the motel and a service station. The officers reported the weapon to a police dispatcher, and then left to pursue Appellant, but did not see his vehicle. When they were returning, they saw Appellant leave his car and approach the same fence pointed out by the security guard, doubtless to retrieve the gun. However, the officers reached him first. He was stopped, handcuffed, frisked and put in the back of the police cruiser, where the officer asked him where the gun was, without giving *Miranda* warnings.

The officers *knew* where the gun was without having to ask. Appellant had been frisked, so it obviously was not on him. He had not yet reached the fence to retrieve the gun when he was apprehended. The security guard had told them where the gun had been thrown.

Most telling, the police did not retrieve the gun until *four hours later*, when different officers arrived and found the gun *in the area the security guard had identified.* Indeed, the Court in *Quarles* took the view that the exception to giving the *Miranda* protections was permissible because the police "were confronted with the *immediate necessity* of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had *just* re-

moved from his empty holster and discarded in the supermarket." *Id.* at 657, 104 S.Ct. 2626. (emphasis added). The Court emphasized the immediacy and exigency of possible public endangerment throughout the opinion. *See id.* at 656, 104 S.Ct. 2626 (focusing on the need for "spontaneity rather than adherence to a police manual"); *id.* at 657, 104 S.Ct. 2626 (approving this practice where officer's decision to ask about weapons was made "in a matter of seconds" and in a "volatile situation confronting them"). Under the facts in *Quarles,* it is reasonable and sound policy to allow the police to ask where the weapon was, as it was immediately available to an accomplice. As the Court pointed out, under those facts, giving the *Miranda* warnings could have kept the police from locating the gun as Quarles may have wisely remained silent. Here, however, there was no need for the question because the police already knew where the gun was and were present to control that area, thus alleviating any public danger. No public purpose was served by asking Appellant about the gun, but the necessity for the *Miranda* protections remained, making the question solely for the purpose of avoiding them. While the Court in *Quarles* does say that the motive of the police, which might include gathering incriminating information as well as public safety information, does not prevent such a question, the Court does go on to clarify that the question must be "reasonably prompted by a concern for the public safety." *Id.* at 656, 104 S.Ct. 2626; *see also United States v. Williams,* 483 F.3d 425, 428 (6th Cir.2007) (reading *Quarles* to require that the officer "have reason to believe ... that someone other than police might gain access to that weapon and inflict harm with it"). In this case, there was no reasonable concern for public safety because the police already knew where the gun was.

Further, in answer to the question as to where the gun was, Appellant's response that he had two guns was more than potentially incriminating. It was tantamount to a confession, given that he was subsequently charged and entered a conditional guilty plea to two counts of illegal possession of a firearm. When the question "Where is the gun?" is posed, there will be an inevitable answer of some kind from the person questioned, whether it range from disbelief to an outright admission. This type of confession is precisely what the fairness rule of *Miranda* was intended to prevent. This rule is so ingrained in our law and society that any erosion of it should be allowed only when necessary for the greater good, but even then it should be very narrow.

I believe the majority extends *Quarles* beyond its intent under the facts of this case when it allows the question about the whereabouts of the gun to go without *Miranda* warnings when the police had no need or reasonable basis to ask the question since they already knew where the gun was, and had chosen to chase the Appellant rather than retrieving the gun immediately. For the question to indeed be necessary, they would need to be told something they did not already know, so that the public could be protected at that point. What the majority does today is to allow police officers a free question about the location of weapons, whether they have a reasonable basis to ask it or not, and makes the gravamen of the question whether a weapon is claimed to be involved rather than whether there is a reasonable public safety risk. As our own Sixth Circuit Court of Appeals has indicated in *Williams,* when applying *Quarles,* there should be a "reason to believe" that risk is imminent.

Consequently, I would hold that the statements in response to the question re-

garding the whereabouts of the gun should have been suppressed, and the case reversed and remanded for actions consistent with this opinion.