RENDERED: JANUARY 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0160-MR

RAYMOND WEATHERLY                                    APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM FULTON CIRCUIT COURT<br>HONORABLE TIMOTHY A. LANGFORD, JUDGE<br>ACTION NO. 17-CR-00121 | |

COMMONWEALTH OF KENTUCKY                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Raymond Weatherly appeals his conviction for trafficking in a controlled substance in the first degree. We affirm.

The relevant underlying facts are the same as those set forth by our Supreme Court in an opinion affirming Weatherly's convictions on closely related charges:

Weatherly and Eva Brady (Brady) stopped at a gas station in Fulton County. Weatherly had previously consumed alcohol and marijuana and Brady had consumed methamphetamine. Brady entered the store while Weatherly remained in his truck. A Kentucky State Police Trooper, Paul Hale (Hale), stopped at the gas station to air up one of the tires on his cruiser. Trooper Hale indicated that, while airing up his tire, he could smell marijuana and the odor intensified when Weatherly got out of his truck and went inside the store.

Weatherly entered the store with a pill bottle and asked Brady to put the pill bottle in her vagina. Weatherly believed the police would not search Brady and Weatherly indicated that he did not have any other drugs in the truck. Upon exiting the store, Trooper Hale stopped Brady and administered a sobriety test. Brady admitted to being high on methamphetamine after being charged with driving under the influence.

When Trooper Hale was arresting Brady, she was unable to sit down in the cruiser because of the pill bottle in her vagina. Brady removed the bottle, which contained a blunt, cocaine, methamphetamine, and 29 oxycodone pills. Brady told Trooper Hale that the bottle belonged to Weatherly. Later, Brady eventually reached an agreement with the Commonwealth to receive unsupervised pretrial diversion in exchange for her testimony against Weatherly.

Weatherly admitted to smoking marijuana and consented to Trooper Hale searching his truck. The search revealed a 9mm pistol in the floorboard console and a shotgun in the backseat. Trooper Hale indicated that he still smelled unsmoked marijuana and eventually discovered a package containing marijuana under the passenger side of the truck. Weatherly denied the package was his but then admitted to tossing it under the truck.

> Weatherly was indicted and ultimately convicted by a jury of first-degree possession of a controlled substance (for each separate drug: methamphetamine, cocaine, and opiates), enhanced by possession of a firearm; possession of marijuana, enhanced by possession of a firearm; two counts of tampering with physical evidence, one for the pill bottle and one for the package of marijuana underneath the truck; and trafficking in a controlled substance, firearm enhanced, for the opiates in the pill bottle. The jury recommended concurrent sentences except that the firearm enhanced trafficking charge was to run consecutively for a total of 25 years in prison.
>
> Upon post-verdict, pre-sentencing motion, the trial court vacated the trafficking conviction due to an improper jury instruction [and] . . . imposed consecutive sentences (10 years each) for the possession of methamphetamine, gun enhanced and possession of cocaine, gun enhanced offenses. . . . Weatherly's total term of imprisonment was set at 20 years.

*Weatherly v. Commonwealth*, No. 2017-SC-000522-MR, 2018 WL 4628570, at *1 (Ky. Sep. 27, 2018) (unpublished) (footnote omitted).

This appeal involves the same underlying facts. But we do not have before us the record from the case which culminated in our Supreme Court's opinion. Instead of seeking to retry Weatherly on the trafficking charge which was vacated after the trial, the Commonwealth obtained a new indictment charging Weatherly with two counts of trafficking in a controlled substance, each firearm enhanced.

The new trafficking charges are apparently based on the same opiates discussed in our Supreme Court's opinion, one count for possessing opiates with intent to traffic them and one for transferring them to Brady.[1] In March 2018, before our Supreme Court issued its opinion, Weatherly filed a motion to dismiss the new trafficking charges, arguing that it would be a double jeopardy violation to convict him of trafficking the same opiates which he had already been convicted of possessing.

The Commonwealth initially agreed with Weatherly. At a hearing in April 2018, the Commonwealth Attorney stated that the new trafficking charges would be a double jeopardy violation if our Supreme Court allowed the possession convictions to stand.[2] But once our Supreme Court did just that in its September 2018 opinion, the Commonwealth changed its mind and insisted the trafficking charges were not a double jeopardy violation.[3] The trial court denied Weatherly's motion to dismiss in August 2019.

---

[1] The same opiates seemingly led to only one trafficking count in the original indictment, *see id.* at *1, so it is unclear why the new indictment contained two counts.

[2] Specifically, the Commonwealth Attorney said, "[i]f the Supreme Court makes a ruling that the possession convictions stand, then it's double jeopardy. But until they make that ruling, it's not double jeopardy." Video, 4/12/18 at 2:43:40 *et seq.* The Commonwealth then reiterated that stance. *Id.* at 2:44:30 *et seq.*

[3] Specifically, in August 2019, the Commonwealth Attorney said he "stand[s] by our earlier position that this is not double jeopardy. These facts are different." Video, 8/8/19 at 11:59:17 *et seq.* Neither Weatherly nor the court then explored the Commonwealth's turnabout.

In December 2019, Weatherly and the Commonwealth reached a plea agreement whereby one trafficking charge would be dismissed and Weatherly would plead guilty to the other charge, which would be amended to eliminate the firearm enhancement. The plea agreement envisioned Weatherly's entering a conditional plea as it explicitly allowed him to appeal on double jeopardy grounds. The agreement further stated that Weatherly would be sentenced to seven-years' imprisonment, concurrent with the sentence he received after the jury trial.

But the trial court refused to approve a conditional guilty plea. *See* Kentucky Rule of Criminal Procedure (RCr) 8.09 ("With the approval of the court a defendant may enter a conditional plea of guilty . . . ."). The trial court also adamantly refused to commit to running Weatherly's new sentence concurrently with his extant one.[4] The end result was near chaos and persistent frustration as

---

[4] Since Weatherly was convicted of multiple charges, Kentucky Revised Statute (KRS) 532.110(1)(c) provides that his maximum term of imprisonment was the maximum term authorized under KRS 532.080, the persistent felony offender statute, "for the highest class of crime for which any of the sentences is imposed." Weatherly's tampering with physical evidence and possession convictions were Class C and D felonies. *See* KRS 524.100(2); KRS 218A.1415(2); KRS 218A.992(1). KRS 532.080(6)(b) authorizes a maximum sentence of twenty years for a persistent felony offender sentenced for an underlying Class C or D felony. In short, Weatherly's twenty-year sentence was the statutory maximum. The trafficking offense at issue arose from the same facts and as amended, is also a Class C felony. Accordingly, Weatherly's new sentence **had** to run concurrently with his extant one. It thus is difficult from this removed vantage point to discern fully why the trial court forcefully, repeatedly refused to commit to running the new sentence concurrently with the existing one.

-5-

Weatherly appeared before the court five times on the same day until finally

entering an *Alford*[5] plea to one count of possessing with intent to traffic opiates.[6]

---

[5] Named after *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), "[a]n *Alford* plea permits a conviction without requiring an admission of guilt and while permitting a protestation of innocence. The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty." *Commonwealth v. Graham*, 586 S.W.3d 754, 764 n.5 (Ky. App. 2019) (internal quotation marks and citations omitted).

[6] The first time, Weatherly's attorney said he needed to discuss matters further with Weatherly before entering a new plea, so the case was briefly continued. The second time, Weatherly said he had not read the guilty plea documents, so the court continued the matter briefly.

The third time, Weatherly's counsel stated that Weatherly wanted to withdraw his motion to dismiss on double jeopardy grounds and instead to plead guilty. But Weatherly insisted he was being tried twice for the same crime and planned to appeal but would accept the plea offer to avoid receiving significantly more prison time at a trial. Extensive discussion ensued. Ultimately, the court grew frustrated with Weatherly and told him to sit down.

When Weatherly came before the court for the fourth time that day the court reiterated that it would not accept a conditional plea and so he would not be able to appeal his guilt if he changed his not guilty plea. However, the court also vaguely told Weatherly that he "may be able to appeal other aspects – my rulings or anything else today or at any time." Video, 12/12/19 at 3:20:30 *et seq*. Curiously, neither Weatherly, his attorney, or the Commonwealth sought clarification about what the court believed Weatherly could still appeal if he changed his plea. The proceedings went awry when the court asked Weatherly if he was satisfied with the services of his lawyer and Weatherly answered in the negative. When pressed by the court for an explanation, Weatherly said he did not think his attorney had done a good job showing why the current charges constituted double jeopardy. Weatherly then changed course and said that his attorney had done "fine" but nonetheless persisted in asserting the trafficking charges were a double jeopardy violation. The court and Commonwealth then attempted to explain to Weatherly why he was wrong about the double jeopardy violation. In that discussion, the Commonwealth incorrectly asserted that the new indictment did not specify if Weatherly was charged with trafficking opiates or another substance.

Finally, the court stated, essentially, that it understood the basis for Weatherly's double jeopardy concern, but he would be waiving the right to assert that argument by pleading guilty. The court soon thereafter told Weatherly that he should not plead guilty if he did not want to waive any double jeopardy arguments. Weatherly then said that his attorney had performed acceptably and that he wanted to enter an *Alford* plea to the trafficking charge.

The court said it found Weatherly's plea to have been knowing and voluntary and sentencing would occur the next month. Weatherly then expressed astonishment that he was not going to be sentenced immediately and thus would not know until sentencing whether his new

-6-

The judgment reflects that Weatherly was sentenced to seven-years'

imprisonment, to run concurrent with his extant sentence, for the charge of

possessing opiates with the intent to traffic.  But we do not have footage of the

sentencing to review.[7]  The charge of trafficking via transferring the opiates to Eva

Brady was dismissed.  Weatherly then filed this appeal.

---

sentence would be ordered to run concurrently with his existing one.  Weatherly noted, correctly, that the Commonwealth had written on the plea agreement that the new sentence had to run concurrently to the previous one.  The court grew frustrated and angrily said that it would not commit to running the sentences concurrently.  Astonishingly, the court then ripped a page of the plea documents into pieces, threw them down, and ordered the parties to prepare new documents if Weatherly wished to change his plea.

Weatherly then asked for new counsel; the court responded that it would set a trial date as it was "sick and tired" of Weatherly "trying to dodge around everything . . . ."  *Id.* at 3:37:35 *et seq*.  The court said the parties could draw up new plea papers if they wished but Weatherly would be returned to custody in twenty-one minutes (*i.e.*, at 4:00 p.m.), regardless.  After setting the 4:00 p.m. deadline, the court incongruously instructed Weatherly's counsel to "take your time, talk to him [Weatherly]."  *Id.* at 3:38:52 *et seq*.

Finally, on his fifth appearance of the day, Weatherly tersely entered an *Alford* plea, which the court accepted.  The court told Weatherly that an *Alford* plea would establish his guilt but there was no further discussion of any potential double jeopardy claims or waiver thereof.

We recognize that the laborious, extremely protracted process of obtaining Weatherly's *Alford* plea taxed the patience of all involved.  We also realize the exigencies of a busy docket.  However, we remind the court that Kentucky Supreme Court Rule (SCR) 4.300, Canon 2, Rule 2.8(A) mandates that a judge "require order and decorum" and (B) requires judges to be "patient, dignified, and courteous . . . ."

[7] It appears uncontested that Weatherly was not sentenced in the Fulton Circuit Court courtroom because his counsel had mobility issues and the courthouse elevator was not working – so, as a courtesy, the trial court sentenced Weatherly in a room more accessible to his counsel.  A circuit court clerk employee recorded the sentencing on her phone, but that recording was lost after the employee received a new computer.

Weatherly and the Commonwealth submitted an agreed narrative statement regarding the sentencing to the trial court for its approval.  *See* Kentucky Rule of Appellate Procedure (RAP) 25(A).  However, for reasons which are not plain from the face of the record, the court declined to approve the agreed narrative.  The court's refusal is perplexing since the tendered narrative

Though Weatherly raises sundry arguments, they all boil down to his assertion that it is a double jeopardy violation for him to now be convicted of possession with intent to traffic the same opiates that he was previously convicted of possessing. And "possession of a controlled substance is a lesser offense included within the trafficking charge." *Jackson v. Commonwealth*, 633 S.W.2d 61, 62 (Ky. 1982). *See also* 1 Cooper & Cetrulo *Kentucky Jury Instructions* § 9.11A, § 9.11A.2 (2021) (listing first-degree possession of a controlled substance as a lesser-included offense of first-degree trafficking in a controlled substance). "A defendant is put in double jeopardy when he is convicted of two crimes . . . where one is simply a lesser-included offense of the other. In such a case, the defendant has only actually committed one crime and can only endure one conviction." *Turner v. Commonwealth*, 345 S.W.3d 844, 847 (Ky. 2011).

Of course, a defendant may properly be convicted of both possession and trafficking if two separate quantities of drugs are involved. *See, e.g.*, *Simpson v. Commonwealth*, 159 S.W.3d 824, 828 (Ky. App. 2005) (holding that it did not violate double jeopardy for Simpson to have been convicted of both possessing and trafficking marijuana because there were two discrete quantities of marijuana but

---

statement materially aligns with the contents of a letter the judge sent to Weatherly's counsel. The upshot is that Weatherly was forced to submit a bystander's bill, supported by the affidavits of both the Commonwealth Attorney and the Fulton Circuit Court Clerk. *See* RAP 25(A).

"had the police found only the marijuana in Simpson's car, convictions for both possession and trafficking of that marijuana would have violated Simpson's constitutional guarantee against double jeopardy"). Here, though we do not have the record of the case which led to Weatherly's possession conviction, it seems uncontested that the same opiates in the same pill bottle at the same time form the basis of both the former possession and current possession with intent to traffic convictions. Indeed, though he later changed his mind, the Commonwealth Attorney acknowledged that convicting Weatherly of possessing and trafficking under these facts would be a double jeopardy violation.

However, we need not opine definitively on whether a double jeopardy violation exists because Weatherly waived the ability to raise a double jeopardy argument on appeal.

"While an unconditional guilty plea waives the right to appeal many constitutional protections as well as the right to appeal a finding of guilt on the sufficiency of the evidence, there are some remaining issues that can be raised in an appeal." *Windsor v. Commonwealth*, 250 S.W.3d 306, 307 (Ky. 2008) (citation omitted). Those limited issues include "sentencing issues." *Id.* Weatherly argues his double jeopardy claim involves an appealable sentencing issue. We disagree.

Obviously, Weatherly received a sentence for the trafficking charge and so his current argument in a loose sense involves a claim that his sentence was

illegal because **any** sentence for an unallowable charge would perforce be improper. But a true "sentencing issue" which a defendant may appeal after pleading guilty "is a claim that a sentencing decision is contrary to statute, such as when an imposed sentence is longer than allowed by statute for the crime, or a claim that the decision was made without fully considering the statutorily-allowed sentencing options." *Hayes v. Commonwealth*, 627 S.W.3d 857, 862 (Ky. 2021). Weatherly's sentence was within the statutory range for the amended trafficking charge and there is no indication the court did not consider the appropriate sentencing options. Thus, Weatherly's double jeopardy argument is not a true sentencing issue which he may appeal after entering an *Alford* plea.

The question then becomes whether a double jeopardy claim is otherwise among the limited set of issues which may be raised on appeal after the entry of a guilty, or *Alford*, plea. Our Supreme Court has provided the following guidance regarding the waiver of double jeopardy arguments:

> Henry did not raise this [double jeopardy] issue in the trial court, however, and the Court of Appeals ruled that his plea bargain effected a waiver of the constitutional right. Although we agree with the Court of Appeals that an express waiver of one's right to avoid double jeopardy in exchange for some benefit would preclude a subsequent double jeopardy challenge, there was no express waiver here.

*Henry v. Commonwealth*, 275 S.W.3d 194, 202 (Ky. 2008), *overruled on other grounds by Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010). Indeed, "[a]ny

-10-

right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." *Johnson v. Commonwealth*, 120 S.W.3d 704, 706 (Ky. 2003) (internal quotation marks and citations omitted).

So, we must determine whether Weatherly "express[ly] waive[d]" his "right to avoid double jeopardy in exchange for some benefit . . . ." *Henry*, 275 S.W.3d at 202. The parties have not cited, nor have we independently located, subsequent opinions explaining what is required to satisfy that waiver standard.

It is plain that Weatherly received "some benefit" from his *Alford* plea since one trafficking charge was dismissed and the second was amended downward – the net effect being that Weatherly received a considerably more lenient sentence than what he stood to receive at trial. In fact, the new sentence did not facially increase the amount of time Weatherly would spend in prison as the new sentence was ordered to run concurrently with the existing one. Of course, nearly all guilty (or *Alford*) pleas provide "some benefit" to the pleading defendant. Therefore, we perceive the key question to be whether Weatherly "express[ly]" waived his "right to avoid double jeopardy . . . ." *Henry*, 275 S.W.3d at 202.

Black's Law Dictionary defines an "express waiver" as "[a] voluntary and intentional waiver." *Express waiver*, BLACK'S LAW DICTIONARY (11th ed. 2019). Albeit in a completely different context, we have similarly held that "[t]o be the equivalent of an express waiver, there must be a known right that is

-11-

voluntary[ily] and intentional[ly] surrender[ed.]" *Penticuff v. Miller*, 503 S.W.3d 198, 205 (Ky. App. 2016) (internal quotation marks and citations omitted) (brackets original). We therefore must examine the record to determine whether Weatherly voluntarily and intentionally waived his right to raise double jeopardy claims on appeal. The record shows that he did.

We begin by examining the plea agreement. Originally, the parties envisioned a conditional guilty plea as the offer contained handwritten language stating the Commonwealth "has no objection to a conditional right of appeal with respect to a double jeopardy argument previously submitted to the court." But the trial court adamantly refused to accept a conditional guilty plea and so that handwritten notation was struck through. Weatherly initialed the strike through. The explicit deletion of language permitting Weatherly to appeal on double jeopardy grounds – and Weatherly's acknowledgement thereof – is an express indication that Weatherly was waiving his ability to raise double jeopardy claims on appeal by accepting the plea offer. The knowing, intentional deletion of permission to raise an issue on appeal is the functional equivalent of denying permission to do so.

But that is not the only waiver evidence in the record. Specifically, during Weatherly's fourth appearance before the court on the day he entered his *Alford* plea, the court reminded him that it would not accept a conditional plea and

so he could not appeal his guilt if he entered an *Alford* plea. Then the court stated, essentially, that it understood the basis for Weatherly's double jeopardy argument, but he would be waiving that argument if he changed his not guilty plea. The court repeated that warning soon thereafter, forcefully telling Weatherly that if he "enter[s] this plea bargain, you're waiving that double jeopardy claim . . . . If you don't want to waive it, don't enter this plea." Video, 12/12/19 at 3:31:30 *et seq*. The court then asked Weatherly if he understood he was waiving his double jeopardy claim by entering his *Alford* plea, and Weatherly responded in the affirmative. Thus, the record unmistakably shows that Weatherly expressly waived his "right to avoid double jeopardy in exchange for some benefit . . . ." *Henry*, 275 S.W.3d at 202.

Our conclusion is unchanged by the disjointed process which culminated in Weatherly's *Alford* plea since the trial court's waiver warnings were blunt and plain. We also do not believe Weatherly retained the right to raise double jeopardy arguments on appeal by virtue of the trial court's vague statement to Weatherly that he would retain some unspecified appellate rights if he entered an *Alford* plea. Again, better practice likely would have been for the court to have clarified what appellate rights Weatherly retained. However, the court later explicitly told Weatherly that he could not appeal on double jeopardy grounds if he entered an *Alford* plea. Thus, it would be unreasonable to conclude that the court's

-13-

remark about Weatherly's retaining some unspecified appellate rights encompassed a right to raise double jeopardy arguments on appeal. Moreover, though vague, the trial court's remark was accurate since a defendant retains some very limited appellate rights even after pleading guilty. *Windsor*, 250 S.W.3d at 307.

We recognize that double jeopardy claims often receive special consideration since we "do not want to let stand a conviction possibly tainted by double jeopardy[.]" *Terry v. Commonwealth*, 253 S.W.3d 466, 470 (Ky. 2007). Thus, unlike the vast majority of claims, "the constitutional protection against double jeopardy is not waived by failing to object at the trial level." *Little v. Commonwealth*, 422 S.W.3d 238, 248 (Ky. 2013) (internal quotation marks and citations omitted). But our Supreme Court explicitly held in *Henry*, *supra*, that an express waiver in exchange for a benefit validly waives a defendant's ability to raise a double jeopardy claim on appeal. That is precisely what occurred here. Therefore, although our reasoning differs substantially from that employed by the trial court, we must affirm. *See, e.g.*, *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

For the foregoing reasons, the Fulton Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Kayla D. Deatherage          Daniel Cameron
Frankfort, Kentucky           Attorney General of Kentucky

                            Thomas A. Van De Rostyne
                            Assistant Attorney General
                            Frankfort, Kentucky