RENDERED: APRIL 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1006-MR

JOSHUA KELLEMS                                                          APPELLANT

APPEAL FROM MCLEAN CIRCUIT COURT
v.          HONORABLE BRIAN WIGGINS, JUDGE
ACTION NO. 22-CR-00015

COMMONWEALTH OF KENTUCKY                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE: Appellant, Joshua Kellems, appeals from the McLean Circuit Court's August 15, 2022 judgment of conviction. Kellems entered a conditional guilty plea to reserve his right to appeal the circuit court's denial of his motion to suppress evidence. We affirm.

# BACKGROUND

On October 24, 2021, Deputy Smith of the McLean County Sheriff's Department observed a vehicle without visible license plates and decided to initiate a traffic stop. Deputy Smith stopped the vehicle at approximately 3:58 p.m. Kellems, the driver, was unable to produce a driver's license, proof of insurance, or the vehicle's registration; the vehicle's registration had been canceled for failure to maintain insurance. Upon return to his cruiser, Deputy Smith discovered Kellems' license was suspended.

While Deputy Smith was running the vehicle's Vehicle Identification Number, Chief Deputy Coomes arrived at the scene at approximately 4:09 p.m. Deputy Smith told Chief Deputy Coomes he stopped Kellems because the vehicle lacked a license plate and discovered Kellems was unable to produce proof of insurance or a driver's license. Chief Deputy Coomes believed he had previously charged Kellems with driving without a license, and advised Deputy Smith to arrest him.

Deputy Smith arrested Kellems at approximately 4:21 p.m. Because the car was not insured, Deputy Smith called a tow truck. Chief Deputy Coomes called Deputy McCoy, the Sheriff's Department's canine officer, who arrived at approximately 4:27 p.m. Deputy McCoy performed a canine sniff of the vehicle, and the dog alerted to the presence of narcotics. Deputy McCoy searched the

vehicle and discovered methamphetamine in the center console.  The search also yielded scales and three methamphetamine pipes.  In addition to being arrested for no insurance, no driver's license, and no registration, Kellems was arrested for possession of drug paraphernalia and trafficking methamphetamine.

Kellems filed a motion to suppress evidence discovered as a result of the warrantless search of his vehicle.  The circuit court held a hearing on the motion on May 31, 2022.  The circuit court denied the motion, entering findings of fact, conclusions of law, and an order on July 11, 2022.  Kellems entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.  Kellems now so appeals.

## STANDARD OF REVIEW

Appellate courts engage in a twofold review of pretrial motions to suppress. *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019).  "First, we review the trial court's findings of fact under a clearly erroneous standard.  Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence." *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015) (citations omitted).  Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citing *Kentucky State Racing*

*Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)). "We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Simpson*, 474 S.W.3d at 547 (internal quotation marks and citations omitted).

## ANALYSIS

Kellems argues the circuit court erroneously denied his suppression motion. He argues the Sheriff's deputies illegally arrested him in order to extend the traffic stop and seize his vehicle so that the police canine could arrive. "Although an officer may detain a vehicle and its occupants in order to conduct an ordinary traffic stop, 'any subsequent detention . . . must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference.'" *Turley v. Commonwealth*, 399 S.W.3d 412, 421 (Ky. 2013) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005)). Accordingly, a police officer is not permitted to detain a vehicle's occupants longer than is necessary to effectuate the purpose of the stop "unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (citations omitted).

Kellems' vehicle was stopped because Deputy Smith noticed his vehicle lacked a license plate and, upon being stopped, Kellems was unable to

produce a driver's license, registration for the vehicle, or proof of insurance. Kellems argues the deputies unlawfully extended the stop because they arrested him for offenses which, by law, he could not be arrested for. Under KRS[1] 431.015, police officers are required to issue citations rather than make arrests for misdemeanor offenses, subject to listed exceptions. *See* KRS 431.015(1)(a)-(b).

Ultimately, whether law enforcement was required to issue Kellems a citation rather than arrest him does not bear on the constitutionality of the search of his vehicle. In a case that reached the United States Supreme Court, *Virginia v. Moore*, a motorist, Moore, was pulled over and arrested for the misdemeanor offense of driving on a suspended license, even though this was not an arrestable offense under Virginia law. 553 U.S. 164, 167-68, 128 S. Ct. 1598, 1601-02, 170 L. Ed. 2d 559 (2008). The officers searched Moore incident to the arrest and discovered crack cocaine and cash on his person. *Id*. at 167, 128 S. Ct. at 1601. The Supreme Court determined suppression was not required because it would be unreasonable for the protections of the Fourth Amendment to depend upon "'the law of the particular State in which the search occurs.'" *Id*. at 172, 128 S. Ct. at 1604 (quoting *California v. Greenwood*, 486 U.S. 35, 43, 108 S. Ct. 1625, 1626, 100 L. Ed. 2d 30 (1988)). "While '[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than

---

[1] Kentucky Revised Statutes.

does the Federal Constitution,' . . . state law [does] not alter the content of the Fourth Amendment." *Id*. (quoting *Greenwood*, 486 U.S. at 43, 108 S. Ct. at 1626). So long as "officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest," regardless of state law prohibition against that arrest. *Id*. at 178, 128 S. Ct. at 1608.

Kentucky's Supreme Court "has held time and again that 'Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment.'" *Hunter v. Commonwealth*, 587 S.W.3d 298, 305 (Ky. 2019) (quoting *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996), *overruled on other grounds by Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010)). Recent concurring opinions by our Supreme Court Justices have pushed back against the overly broad application of *LaFollette*, urging abandonment of this principle in favor of a more nuanced examination of the protections our own constitution ensures. *See*, *e.g.*, *Commonwealth v. Reed*, 647 S.W.3d 237, 254-58 (Minton, J., concurring) ("There are countless applications of the Fourth Amendment. To say that Section 10 is co-extensive with the Fourth Amendment for purposes of one application is not to say the protections provided by the two are co-extensive in *every* application. . . . Insofar as *LaFollette* stands for the proposition that Section

10 and the Fourth Amendment are co-extensive in every application, we should overrule it.").

To date, however, our courts continue to read our state constitution as providing no greater protection than the Fourth Amendment. Deputy Smith's arrest of Kellems, even assuming Kellems should have instead received a citation pursuant to KRS 431.015, was not unconstitutional. Deputy Smith observed Kellems lacked a license plate on his vehicle; "[i]t has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred." *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001)). Deputy Smith discovered during the traffic stop that the vehicle lacked insurance and that Kellems lacked a driver's license and arrested Kellems upon the advice of Chief Deputy Coomes; "[t]here is no doubt that a police officer may make a warrantless arrest 'when a misdemeanor, as defined in KRS 431.060, has been committed in his presence.'" *Commonwealth v. Mobley*, 160 S.W.3d 783, 786 (Ky. 2005) (quoting KRS 431.005(1)(d)).

Because the question of whether Kellems' arrest was prohibited by state statute has no bearing on the constitutionality of his arrest, we must determine whether the canine sniff of Kellems' vehicle following his arrest was unconstitutional. It is true that "a police officer may not extend a traffic stop

beyond its original purpose for the sole purpose of conducting a sniff search – not even for a *de minimis* period of time." *Davis v. Commonwealth*, 484 S.W.3d 288, 293 (Ky. 2016) (citing *Rodriguez v. U.S.*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015)). However, that is not what happened here. Nothing of record indicates the deputies impermissibly extended the traffic stop, which was terminated once Kellems was arrested. Our inquiry now becomes whether, once the occupant of a vehicle has been arrested following a traffic stop and the vehicle remains parked on the side of a public road, law enforcement may perform a canine sniff of a vehicle. We conclude this practice does not run afoul of the Fourth Amendment.

"All searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant." *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky. 1979). Our jurisprudence recognizes two permissible circumstances when a vehicle may be searched, without a warrant, incident to an arrest. *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011) (citing *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)). First, law enforcement may perform a vehicle search "incident to a recent occupant's arrest 'when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.'" *Id.* (quoting *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719). Second, "[a] search is also

warranted when it is 'reasonable to believe the vehicle contains evidence of the offense of arrest.'" *Id*. (quoting *Gant*, 556 U.S. at 351, 129 S. Ct. at 1723).

Neither of these circumstances are present in the instant case. However, the dog sniff of Kellems' vehicle provided a basis to search it independently of the fact of Kellems' arrest. Once the dog alerted to the presence of drugs in the vehicle, the police had probable cause sufficient to support a warrantless search. The "automobile exception" to the warrant requirement "allows officers to search a legitimately stopped automobile where probable cause exists that contraband or evidence of a crime is in the vehicle." *Clark v. Commonwealth*, 868 S.W.2d 101, 106 (Ky. App. 1993) *reversed on other grounds by Henry v. Commonwealth*, 275 S.W.3d 194 (Ky. 2008) (citing *United States v. Ross*, 456 U.S. 798, 800-01, 102 S. Ct. 2157, 2159-61, 72 L. Ed. 2d 572 (1982)).

The circuit court relied upon *Olmeda v. Commonwealth* in denying Kellems' suppression motion. In *Olmeda*, a police officer pulled Olmeda over for multiple vehicle equipment violations. 601 S.W.3d 183, 184 (Ky. App. 2020). During the stop, the officer learned Olmeda's license was suspended and came to suspect he was driving under the influence of alcohol. *Id.* Another officer arrived and noticed Olmeda's eyes were dilated, and the police then suspected Olmeda was under the influence of drugs. *Id*. A canine unit arrived and performed a sniff search while Olmeda underwent field sobriety testing. *Id*. The dog alerted to the

presence of drugs, and the police discovered marijuana, cocaine, and drug paraphernalia in the vehicle. *Id.* A panel of this Court noted "the length of the *vehicle's* stop was ultimately governed by the fact that Olmeda, even if he were only issued a citation for his offenses, could not legally drive away due to his suspended license." *Id.* at 187 (emphasis original). "As a result, regardless of whether Olmeda was present, Olmeda's truck would certainly have remained at the scene long enough for the K-9 unit to arrive." *Id.*

*Olmeda* is not perfectly analogous to the instant appeal. The officers came to suspect Olmeda of driving while under the influence of drugs, *id.* at 184, while Kellems was arrested for offenses completely unrelated to drugs and made no indication that drugs would be discovered in the vehicle. Further, the canine sniff was performed on Olmeda's vehicle during the initial traffic stop, *id.*, and Kellems' vehicle was searched after he was placed under arrest.

However, *Olmeda* is still instructive because, as in *Olmeda*, Kellems' car would have remained in place even had Kellems not been arrested; Kellems would not have been legally permitted to drive it away due to his suspended license. This gave the deputies ample opportunity to summon a canine unit to perform a drug sniff of Kellems' vehicle. Further, Kellems had no legitimate interest in privacy which would shield him against the drug sniff of his vehicle; "any interest in possessing contraband cannot be deemed 'legitimate,' and thus,

-10-

governmental conduct that *only* reveals the possession of contraband[,]" such as use of a canine sniff to detect narcotics, "'compromises no legitimate privacy interest.'" *Illinois v. Caballes*, 543 U.S. 405, 408-09, 125 S. Ct. 834, 837-38, 160 L. Ed. 2d 842 (2005) (emphasis original) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123, 104 S. Ct. 1652, 1661, 80 L. Ed. 2d 85 (1984)).

In sum, whether Kellems could be arrested for his misdemeanor offenses does not bear on the constitutionality of the arrest. Because the deputies had probable cause to believe an offense occurred in their presence, they were constitutionally permitted to arrest him, regardless of any state law prohibition against that arrest. *See Moore*, 553 U.S. at 178, 128 S. Ct. at 1608. Once Kellems was arrested, his vehicle sat unoccupied on the side of a public road while it waited to be towed. The deputies had ample time to summon a canine unit which alerted to narcotics in Kellems' vehicle. Therefore, the warrantless search of his vehicle was not incident to his arrest. Rather, the search was permissible and constitutional once the canine sniff generated probable cause for such search.

## CONCLUSION

Based on the foregoing, we affirm the McLean Circuit Court's August 15, 2022 judgment of conviction.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky